**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

LAKEISHA DAVIS and KATHRYN
GANNON,

          Plaintiffs,

    v.

CAPE MAY PROSECUTOR'S OFFICE,
et al.,

          Defendants.

---

Civ. No. 1:22-cv-00783-NLH-EAP

**OPINION**

**APPEARANCES**:

PHILIP S. BURNHAM, II
BURNHAM DOUGLASS
8000 SAGEMORE DRIVE
SUITE 8303
MARLTON, NJ 08053

    *Attorney for Plaintiffs*

RICHARD L. GOLDSTEIN
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
15000 MIDLANTIC DRIVE
SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054

    *Attorneys for the Defendants*

**HILLMAN**, District Judge

Before the Court is Defendants' Motion to Dismiss (ECF 5). For the reasons expressed below Defendant's Motion to Dismiss will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiffs are two employees at the Cape May County Prosecutor's Office and the County of Cape May, both employed as detectives.  (Complaint, ECF 1 [hereinafter "Compl."] at ¶¶ 6, 8).  Lakeisha Davis ("Plaintiff Davis") is a black woman and Kathryn Gannon ("Plaintiff Gannon") is a white woman.  (Id.).

On October 31, 2019, Plaintiff Davis filed a charge with the Equal Employment Opportunity Commission ("EEOC").  (Id. at ¶ 45).  On December 13, 2019, Plaintiff Davis filed a continuing charge, alleging additional specific instances of discriminatory conduct.  (Id. at ¶ 46).  She filed another amendment on December 2, 2020.  (Id. at ¶ 115).  On November 13, 2019, Plaintiff Gannon filed a charge with the EEOC, and on December 18, 2019 she filed an additional charge.  (Id. at ¶¶ 206-07).  On December 9, 2021, the EEOC issued Plaintiffs right to sue letters.  (Id. at exhibit 1).

On February 14, 2022, Plaintiffs filed a complaint with this Court, alleging Sex-Based Hostile Work Environment in Violation of Title VII to the Civil Rights Act of 1964 (Count I), Race-Based Hostile Working Environment in Violation of Title VII (Count II), Retaliation in Violation of Title VII (Count

2

III), Race-Based Disparate Treatment in Violation of Title VII (Count IV), Gender-Based Disparate Treatment in Violation of Title VII (Count V), Race-Based Hostile Work Environment in Violation of the New Jersey Law Against Discrimination ("NJLAD") (Count VI), Gender-Based Hostile Work Environment in Violation of the NJLAD (Count VII), Retaliation in Violation of the NJLAD (Count VIII), Race-Based Disparate Treatment in Violation of the NJLAD (Count IX), Sex-Based Disparate Treatment in Violation of the NJLAD (Count X), and Aiding and Abetting in Violation of the NJLAD (Count XI).

In the Complaint, Plaintiff Davis alleges that she was passed over for assignments she applied to and given unfavorable assignments. She states that she applied to be on the Hostage Negotiation team in 2015 and again in 2018, and never received a response. (Id. at ¶¶ 51-53). She also explains that in 2015 she was transferred from the Special Victims Unit to the Litigation Unit, which she describes as an assignment that officers are sent to "as punishment or for a figurative 'time out.'" (Id. at ¶ 60). Plaintiff Davis further explains that in 2020 she was offered a return to the Special Victims Unit, but declined because the specific coworkers and supervisors that were "discriminating against her would be given authority over her and/or access to her." (Id. at ¶¶ 89-90). In addition, Plaintiff Davis states that she was denied participation in "ABC

details," which would allow her opportunity to earn overtime, although she does not plead when this occurred. (Id. at ¶ 78).

Plaintiff Davis alleges discriminatory comments. She asserts that in 2010 or 2011 she was referred to as a "token black female" (Id. at ¶ 81), in 2012 she was referred to as a "fucking bitch" (Id. at ¶ 55), and in 2019 she learned that a Chief Paul Skill ("Defendant Skill") had referred to her as a "Nigger Bitch" (Id. at ¶ 34). She alleges that men in the office refer to women by "bitch" as "everyday talk." (Id. at ¶ 58). She also alleges that Lieutenant Steve Vivarina ("Defendant Vivarina") "was overheard saying he 'hates women in law enforcement.'" (Id. at ¶ 78). She explains that she attempted to report verbal disrespect and in response was told that if she does not like it, she can go pump gas instead of working as an officer. (Id. at ¶ 57).

Plaintiff Davis alleges experiencing intimidation. She alleges that Defendant Skill waived to her in a "childlike and taunting manner" in June 2020 (Id. at ¶ 91), that on another instance Defendant Skill approached an office that Plaintiff Davis was in and refused to make eye contact or engage her in direct conversation in July 2020 (Id. at ¶ 101). She claims that in July 2020, officers were pressuring one of her witnesses of the harassment for information about her EEOC claims (Id. at ¶ 108), and that officers asked Plaintiff to meet and discuss

the allegations (Id. at ¶¶ 112-13).  Finally, also in July 2020, she explains that she had another officer cover her on-call "Duty Weekend" so she could attend a Black Lives Matter event, and although such coverage arrangements are commonplace she was investigated by internal affairs.  (Id. at ¶¶ 95-97).  She asserts that she was intimidated by this investigation.  (Id. at ¶ 97).

Plaintiff Davis alleges she was disciplined for conduct that men were not disciplined for.  She explains that in 2018 after working in a hot garage she changed into a t-shirt that showed her tattoo.  (Id. at ¶¶ 65-66).  She was reprimanded for having a visible tattoo contrary to office policy.  (Id. at ¶ 67).  However, she has observed while male colleagues with visible tattoos who were not disciplined.  (Id. at ¶¶ 69-72).

Plaintiff Gannon alleges that she was passed over for promotions and recognition, and was assigned to less favorable assignments.  First, she alleges that in 2014 she was denied a promotion to Detective First Class and corresponding pay raise to which she was entitled, but was ultimately awarded the title change and pay increase after appealing the decision, advising she would file a grievance, and pointing out an error in the salary.  (Id. at ¶¶ 129-139).  In 2017, Plaintiff Gannon applied to a sergeant's position.  (Id. at ¶ 145).  She was not selected for the sergeant's position, which was awarded to two men.  (Id.

at ¶ 146).  In 2017, she was not given a commendation for a case she worked on while a male who did much less work on the case was given a commendation.  (Id at ¶¶ 154-56).  In 2018, she was assigned to the Animal Cruelty Task Force and Fugitive Warrant Unit and was also given role of "TAC Officer, a position that was previously handled by a civilian agent."  (Id. at ¶ 195).  Plaintiff Gannon alleges that these assignments included clerical work and a loss of status.  (Id. at 198-199).

Plaintiff Gannon alleges that she was overloaded with work.  She states that she was assigned to additional trainings in 2020, including a leadership training and animal cruelty investigation training.  (Id. at ¶¶ 213, 215).  She argues that this was an "attempt to inundate her with classes/training that would interfere with her ability to do her job."  (Id. at ¶ 214).  She alleges that this conduct continued "[t]hrough the fall and winter of 2020" in that "Plaintiff-Gannon, as a direct result of her reports of gender discrimination, continued to be assigned menial tasks, overloaded with work, and not given the help she needed to effectively do her job."  (Id. at ¶ 229).

Plaintiff Gannon alleges that she was required to be available more than her male coworkers.  She states that in 2020, she found out that one of her coworkers was only putting in for four hours of time off when she, as well as another male colleague, put in for eight hours off for the same time-

conflicts.  (Id. at ¶¶ 223-26).  In addition, in 2021, she was advised that she needed to be available on her days off to assist with fugitive warrants.  (Id. at ¶ 233).

Plaintiff Gannon alleges discriminatory comments.  First, in 2009 while getting a beer with Defendant Skill, he obviously looked at her and stated "'I just wanted to see what you were working with' and 'I was just looking at your butt.'"  (Id. at ¶¶ 125-127).  In 2015 she was told she was "too emotional" for a promotion.  (Id. at ¶ 143).  In 2018, she was present when Defendant Vivarina made a sexual joke.  (Id. at ¶ 188).  While she does not include any more specifics, Plaintiff Gannon states that "[c]learly, this was not the first instance that [she] was forced to endure such inappropriate jokes and comments."  (Id. at ¶ 191).  She further alleges that "[i]n her seventeen (17) years with the CMCPO, Plaintiff-Gannon had to endure the content of lewd conversations between males on many occasions including dirty jokes and comments regarding females inabilities, etc."  (Id. at ¶ 192).  Finally, she alleges that she was aware of comments in 2019 from a Defendant Vivarina stating that he hates women in law enforcement.  (Id. at ¶¶ 204-05).

Plaintiff Gannon alleges that she experienced intimidation.  She explains that in 2006 when she was hired she found out she was pregnant after she was hired.  (Id. at ¶ 120).  She was accused of hiding her pregnancy and threatened with termination.

7

(Id. at ¶¶ 121-22).  In 2018, Defendant Vivarina "did intentionally intimidate" her by telling her he was aware that she had initiated internal affairs investigations against him. (Id. at ¶ 172).  She claims that in 2018 someone stole her Police Benevolent Association cards and previously someone had stolen a book that belonged to her.  (Id. at ¶¶ 183, 185).  In January 2020, she claims that she said hello to a former chief, who ignored her and then walked behind her down a hallway.  (Id. at ¶¶ 210-11).

On April 8, 2022, Defendants filed a Motion to Dismiss. (ECF 5) and Supporting Brief (ECF 5-2).  On May 2, 2022, Plaintiffs filed a response.  (ECF 7).  On May 9, 2022, Defendants filed a reply. (ECF 8).

## II.  **LEGAL STANDARD**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).  A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

"A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is

plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (<u>quoting</u>

<u>Twombly</u>, 550 U.S. at 570).

### III.  <u>DISCUSSION</u>

#### A. <u>Subject Matter Jurisdiction</u>

This Court has subject matter jurisdiction over

Plaintiffs' Title VII and Civil Rights Act claims under 28

U.S.C. § 1331 and subject matter jurisdiction over Plaintiffs'

New Jersey Law Against Discrimination claims under 28 U.S.C. §

1367.

#### B. <u>Timeliness of Title VII Violations</u>

Defendants argue that all of Plaintiffs' Title VII claims

are time-barred.  (Defendants', Cape May Prosecutor's Office,

County of Cape May, Paul Skill, and Steve Vivarina, Brief in

Support of Motion to Dismiss Plaintiff's Complaint Pursuant to

R. 12(b)(6), ECF 5-2 [hereinafter Motion to Dismiss Br.] at 2).

A plaintiff has 300 days from the date of the discriminatory act

to file a charge with the Equal Employment Opportunity

Commission ("EEOC").  <u>See</u> 42 U.S.C. § 2000e-5(e).  "Absent a

continuing violation, all discriminatory acts that are alleged

to have occurred more than 300 days prior to the EEOC filing are

time-barred."  <u>Verdin v. Weeks Marine Inc.</u>, 124 F. App'x 92, 95

(3d Cir. 2005).

Under the continuing violation doctrine, "when a

defendant's conduct is part of a continuing practice, an action

is timely so long as the last act evidencing the continuing practice falls within the limitations period." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).  Thus, if the discriminatory conduct constitutes a "continuing violation," "the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992).  In order to establish a continuing violation Plaintiff must demonstrate a "discriminatory pattern or practice" that is "more than the occurrence of isolated or sporadic acts of intentional discrimination."  Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981).

By contrast, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  In order for the "clock" to start, the specific discriminatory or retaliatory practice must be identified.  Delaware State Coll. v. Ricks, 449 U.S. 250, 257 (1980).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. 101 at 114.  The Supreme Court has held that the continuing violations doctrine is not applicable to Title VII

actions based on discrete discriminatory or retaliatory acts. Id. at 114. The Third Circuit has similarly recognized a non-exhaustive list of discrete acts which includes "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

### i. Davis Timeline

It is undisputed that Plaintiff Davis initiated her charge with the EEOC on October 31, 2019. (Compl. at ¶ 45). Plaintiff Davis filed amendments on December 13, 2019 and December 2, 2020. (Id. at ¶¶ 46, 115). Thus, in support of her Title VII claims, absent a continuing violation, this court is limited to allegations beginning January 4, 2019.

### ii. Gannon Timeline

Plaintiff-Gannon filed her EEOC charge on November 13, 2019. (Id. at ¶ 206). Plaintiff Gannon filed an amendment on December 18, 2019. (Id. at ¶ 207). Thus, the Court may consider any allegations beginning January 17, 2019. Absent a continuing violation, this court is limited to allegations before January 17, 2019.

C. **Analysis of Timeliness of Race and Sex-Based Hostile Work Environment Claims (Count I and Count II)**

Defendants argue that "Plaintiffs have . . . failed to plead sufficient facts to invoke the 'continuing violation' exception, and as such, all alleged discriminatory conduct, which falls outside of the respective 300 day periods, is time barred."  (Motion to Dismiss Br. at 17–18).  Plaintiffs respond that they have "properly pled a continuing violation," and as such "the **many years** that the Plaintiffs were forced to endure **daily** hostility towards women and, in the case of Plaintiff-Davis, black women, such as (among other things) having to listen to women being referred to as 'bitches,' being called the 'token black female,' and the constant and continuing 'lewd' comments and jokes made about female inabilities . . . can be brought into the ambit of Plaintiffs' claims."  (Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, ECF 7 [hereinafter "Response"] at 11 (emphasis in original)).  Moreover, Plaintiffs state that "even if this Court determines that Plaintiffs have not pled sufficient facts to support a continuing violation, there are more than sufficient facts within the actionable time period to substantiate Plaintiffs' Title VII (and LAD) claims."  (Id.).

In determining whether Plaintiffs have stated a claim "the threshold question is whether *any* of the alleged incidents fall within the statutory period."  Lombard v. New Jersey Dep't of Transportation, No. 18-01319, 2018 WL 5617553, at *4 (D.N.J.

Oct. 30, 2018) (citation omitted).  "[A] plaintiff can successfully bring a hostile work environment claim alleging a continuing pattern of unlawful conduct so long as one discriminatory act occurred within the period."  Id.  Thus, we first analyze whether each Plaintiff has alleged any discriminatory act within the limitations period.  However, this is not the end of the analysis of whether the continuing violation doctrine supports Plaintiffs' hostile work environment claims.  The Court must also consider whether the allegations demonstrate a pattern of conduct, rather than "isolated or sporadic acts."  Jewett, 653 F.2d at 91–92.

### 1. Davis

First, we identify allegations within the applicable period that are specifically tied to race.  Plaintiff Davis alleges that on June 6, 2020 she attended a Black Lives Matter event.  (Compl. at ¶ 96).  This was during a weekend where she was scheduled to be on call as it was her "Duty Weekend." (Id.).  Plaintiff Davis found coverage for her weekend.  (Id. at ¶ 97).  She explains that it is common for officers to cover each other's duty weekend.  (Id. at ¶ 98).  Despite the fact that this was not out of the norm, Plaintiff Davis discovered that Internal Affairs was investigating her coverage for that weekend.  (Id. at ¶ 95).  She alleges feeling "intimidated and threatened" by this investigation.  (Id. at ¶ 97).

Second, we identify allegations within the applicable
period that are specifically tied to gender.  While she does not
provide a specific date, Plaintiff alleges that CMCPO employees
use the term "bitch" to refer to women as "everyday talk"
through the present.  (Id. at ¶ 58).

Third, we note allegations of intimidation within the
limitations period that Plaintiff Davis attributes to
discrimination, but are not limited to either race or gender but
may result from both.  Plaintiff Davis alleges feeling
intimidated on June 18, 2020 when Defendant Skill waived at her
in a "taunting manner (Id. at ¶ 91), and an instance on July 8,
2020 where Defendant Skill came to an office Davis had been
called to and did not make eye contact or speak directly to her
in a way Davis found intimidating (Id. at ¶ 101).

As all of the above allegations are plead within the
applicable limitations period, Plaintiff Davis has alleged a
discriminatory act within the period such that the continuing
violation doctrine may apply to support her allegations.  Thus,
we proceed to analyzing whether these allegations are isolated
and sporadic acts, or whether they may be part of continuing
discrimination.

In considering whether the conduct alleged constitutes a
pattern of conduct or isolated acts, we consider the types of
acts alleged, the frequency, and the "degree of permanence."

See Harel v. Rutgers, State Univ., 5 F. Supp. 2d 246, 262
(D.N.J. 1998), aff'd sub nom. Harel v. Rutgers, 191 F.3d 444 (3d
Cir. 1999).  Plaintiff has plead a pattern of comments about her
race, including that she was called a "Nigger Bitch" (Id. at ¶
34), and that she was referred to as a "token black female" (Id.
at ¶ 81).  Plaintiff has plead a pattern of sex-based derogatory
language including that she hears women called a bitch as part
of "everyday talk" (Id. at 58), that she was called a "fucking
bitch, who can't stay out of trouble" (Id. at ¶ 55), as stated
in the list of race comments that she was called a "Nigger
Bitch" (Id. at ¶ 34), that she overheard a defendant state that
"he 'hates women in law enforcement'" (Id. at ¶ 78).  Plaintiff
has alleged a pattern of intimidation including intimidating
gestures towards her like childlike waiving and refusing eye
contact (Id. at ¶¶ 91, 101), as well as increased oversight into
her actions like an internal affairs investigation into her
having an on-call weekend covered (Id. at ¶¶ 95-97).  These are
not isolated incidents, but instead a pattern of conduct
involving a range of supervisors and colleagues.  Thus, we will
not dismiss Plaintiff Davis' hostile work environment claims
(Counts I and II) as time-barred at this time.

### 2. Gannon

The allegations of discrimination that Gannon alleges
within the applicable time period are sparse.  The only specific

allegation between January 17, 2019 and her charge 300 days later on November 13, 2019 is that she was informed in summer 2019 that Defendant Viviarina said that he "hates women in law enforcement" and "hates females, specifically females in law enforcement."  (Id. at ¶¶ 204-05).

In determining whether these statements are part of a pattern of conduct we consider other comments that Plaintiff Gannon alleges.  She alleges that in 2009, Defendant Skill obviously looked at her and stated "'I just wanted to see what you were working with' and 'I was just looking at your butt.'" (Id. at ¶¶ 126-27).  Then in 2015 she was told she was "too emotional" for a promotion.  (Id. at ¶ 143).  In 2018, she was present when Defendant Vivarina made a sexual joke.  (Id. at ¶ 188).  While she does not include further specifics, Plaintiff Gannon states that "[c]learly, this was not the first instance that [she] was forced to endure such inappropriate jokes and comments."  (Id. at ¶ 191).  She further alleges that "[i]n her seventeen (17) years with the CMCPO, Plaintiff-Gannon had to endure the content of lewd conversations between males on many occasions including dirty jokes and comments regarding females inabilities, etc."  (Id. at ¶ 192).  Accepting the allegations as true, Plaintiff Gannon has endured years of lewd comments and jokes as well as comments undermining women's abilities in the workplace.  While we caution that the specific allegations set

out in the complaint may not be sufficient to ultimately support a claim, reading the allegations in the light most favorable to the plaintiff we find that there are sufficient allegations to demonstrate a pattern of conduct at the motion to dismiss phase. Thus, we will not dismiss Plaintiff Gannon's hostile work environment claim (Count I) as time-barred at this time.

### D. <u>Analysis of Severe and Pervasive Requirement for Title VII Hostile Work Environment Claims</u>

Now that we have determined that the continuing violation doctrine applies to Plaintiffs' hostile work environment claims, we may consider conduct both within and outside the limitations period in determining whether the conduct plead is sufficiently severe and pervasive to survive a motion to dismiss.  Defendants argue that Plaintiffs' allegations "do not meet the 'Severe or Pervasive' Standard."  (Motion to Dismiss Br. at 14).

"The correct standard is 'severe _or_ pervasive.'" <u>Castleberry v. STI Grp.</u>, 863 F.3d 259, 264 (3d Cir. 2017) (emphasis in original).  As such, "'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." <u>Id.</u>  This analysis "requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its

18

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id. (quoting Harris, 510 U.S. 17, 23 (1993)).

### i. Davis' Race-Based Claim

Defendants seem to admit that the use of racial slurs constitute "discrimination per se."  (Motion to Dismiss Br. at 24).  While Defendants urge us not to consider the use of the slur here in determining whether the workplace environment was sufficiently severe and pervasive because they allege it was outside the limitations period, we have determined that Plaintiffs have sufficiently pled a continuing violation for purposes of withstanding a motion to dismiss.  Thus, we may consider allegations outside the limitations period.  The language used in reference to Plaintiff Davis is sufficiently severe to support a claim of hostile work environment claim.  We find that Plaintiff has plead a severe and pervasive hostile work environment based on race.  Therefore, we will deny Defendants Motion to Dismiss as it relates to Count II, Davis' race-based hostile work environment claim.

### ii. Sex-Based Claims

Davis alleges pervasive conduct demonstrating a hostile work environment.  Reading the complaint in the light most favorable to the Plaintiffs, we note that Davis has alleged that

women are called bitches on an everyday basis through the present.  (Compl. at ¶ 58).  Assuming this is true, this is pervasive behavior.  These allegations are bolstered also by allegations of supervisors claiming to hate women in law enforcement.  (Id. at ¶ 78).

Similarly, Gannon also alleges hearing of comments that Defendant Vivarina hates women in law enforcement.  (Id. at ¶¶ 204-05).  In addition, Gannon alleges "many occasions" of lewd jokes and criticism of women's abilities.  (Id. at ¶ 192).  She alleges that she has endured such comments for years.  (Id.) While Gannon only provides one discrete example of this conduct, her allegations on their face aver continued and pervasive conduct.  (See Id. at ¶ 188).

Because Plaintiffs have alleged pervasive comments against women, gendered derogatory language, and lewd comments, they will be permitted to proceed on their sex-based hostile work environment claim.   Therefore, we will deny Defendants Motion to Dismiss as it relates to Count I, both Davis' and Gannon's sex-based hostile work environment claims.

### E. Analysis of Timeliness of Title VII Disparate Treatment and Retaliation Claims

Under Title VII, to establish a disparate treatment claim, "a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the position in

question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016).  A retaliation claim under Title VII requires a plaintiff to show that: "1) that she engaged in protected activity, 2) that the employer took adverse action against her, and 3) that a causal link exists between the protected activity and the employer's adverse action." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

### i. Timeliness of Davis' Race and Gender-Based Disparate Treatment and Retaliation Claims (Count III, Count IV, and Count V)

Plaintiff Davis has not alleged any allegations of an adverse employment action based on her sex or race in the limitations period.  While she did plead allegations of an adverse employment action, including that she was not selected for new roles like the Hostage Negotiation Unit and that she was transferred to the Litigation Unit which she alleges is a less favorable assignment, all of these allegations occurred outside the statute of limitations.[1]  (Id. at ¶¶ 51-53, 60).

---

[1] We note that Plaintiff Davis alleges, without stating exactly when that she "requested assignment to the Hostage Negotiation team and was denied this assignment." (Compl. at ¶ 49).  It seems that this allegation refers to her applications in 2015 and 2018, but it is not explicitly clear.  Similar, Plaintiff Davis alleges, without stating when, that she was refused "participation in ABC details." (Id. at ¶ 78).  While we accept all well-pleaded facts as true and read the allegations in the

We note that Plaintiff Davis' allegation that she was subject to an Internal Affairs investigation after having another officer cover her Duty Weekend while she attended a Black Lives Matter event does not rise to the level of an adverse employment action.  (See Id. at ¶¶ 95-98).  The Third Circuit has explained that "a visit by an Internal Affairs officer do[es] not rise to the level of adverse employment actions" absent allegations that it "impacted on the employee's compensation or rank" or was "virtually equivalent to discharge." Fraternal Ord. of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 241 (3d Cir. 2016) (internal quotations omitted); See also Dillard v. Morris Cnty. Prosecutor's Off., No. 19-19089, 2020 WL 4932527, at *9 (D.N.J. Aug. 24, 2020) (finding that internal affairs investigation did not constitute an adverse employment action where "there is no allegation that these actions impacted his compensation or rank or were equivalent to a discharge.").

Because both the Title VII Disparate Treatment and Retaliation claims require allegations of an adverse employment

---

light most favorable to Plaintiffs, we will not engage in speculation.  If these events occurred within the applicable period and Plaintiffs mistakenly did not include the date, they may amend their complaint to remedy this error.  However, from the facts as alleged, the complaint does not allege that these potential adverse employment actions occurred within the applicable period.

action, and Plaintiff Davis has not alleged an adverse

employment action within the limitations period, Plaintiff Davis

had not sufficiently plead a Title VII Disparate Treatment or

Retaliation claim.  Therefore, Counts III, IV, and V will be

dismissed as to Plaintiff Davis.

> ### ii.  Timeliness of Gannon's Gender-Based Disparate Treatment and Retaliation Claims (Count III and Count V)

Plaintiff Gannon has not alleged any allegations of an

adverse employment action based on her gender in the limitations

period.  Plaintiff Gannon alleged that she was passed over for a

position in 2017 (Compl. at ¶ 146), and was assigned to an

unfavorable position as a "TAC Officer, a position that was

previously handled by a civilian agent" in 2018 (Id. at ¶ 195).

In addition, Plaintiff Gannon alleges that she was discriminated

against by Defendant Vivarina "giving her unwanted cases and

assigning her to cases to basically be report writer or

organizer of the case."  (Id. at ¶ 181).  While this paragraph

does not explicitly provide a timeframe for this allegation, it

appears from the context of the surrounding paragraph that this

alleged conduct was in 2018 prior to her assignment to the TAC

Officer position.  None of these allegations are within the

applicable period.

Plaintiff Gannon alleges that in 2020 she "continued to be

assigned menial tasks, overloaded with work, and not given the

help she needed to effectively do her job."  (Id. at ¶ 229).

Plaintiff Gannon does not allege that the tasks she was assigned

were outside of her job description.  See Anderson v. Mercer

Cnty. Sheriff Dep't, 815 F. App'x 664, 667 (3d Cir. 2020)

(finding no adverse employment action where a role "fell under

the normal job description of a sheriff.").  She does not allege

that any of these tasks were a deviation from the positions she

was given in 2018 on the Animal Cruelty Task Force, in the

Fugitive/Warrants Unit, and as TAC Officer.  While we

acknowledge that Plaintiff Gannon asserts that her assignment to

these roles in 2018 was disadvantageous, as stated above these

assignments occurred outside of the applicable period.

Plaintiff Gannon's reiteration that she continues to be

unhappy with the assignments does not rehabilitate the lateness

of these allegations.  Moreover, "assignment of extra

responsibilities" is not an adverse employment action where such

assignment was not alleged to have altered her "compensation,

terms, conditions, or privileges of employment."  Rosati v.

Colello, 94 F. Supp. 3d 704, 714 (E.D. Pa. Apr. 2, 2015).  Thus,

this extra work does not constitute an adverse employment

action.  In addition, the additional leadership training and

animal cruelty investigation trainings that she was assigned to

attend do not constitute an adverse employment action.  See

Nepomuceno v. Astellas US LLC, No. 11-4532, 2013 WL 3746143, at
*4 (D.N.J. July 9, 2013).

Because both the Title VII Disparate Treatment and
Retaliation claims require allegations of an adverse employment
action, and Plaintiff Gannon has not alleged an adverse
employment action within the limitations period, Plaintiff
Gannon had not sufficiently plead a Title VII Disparate
Treatment or Retaliation claim.  Therefore, Counts III and V
will be dismissed as to Plaintiff Gannon.

### F. **Timeliness of NJLAD Claims**

Claims under the New Jersey Law Against Discrimination are
subject to a two-year statute of limitations.  Montells v.
Haynes, 627 A.2d 654, 660 (N.J. 1993).  The two-year statute of
limitations period begins two years prior to the date Plaintiffs
filed their complaint.  Plaintiffs filed their complaint on
February 14, 2022.  Thus, this court may consider allegations
beginning February 14, 2020.  Like claims under Title VII, the
continuing violation doctrine also applies to NJLAD claims.
Alexander v. Seton Hall Univ., 8 A.3d 198, 203 (N.J. 2010).

#### i. **NJLAD Disparate Treatment and Retaliation Claims (Count VIII, Count IX, and Count X)**

Under the NJLAD, a disparate treatment claim requires a
plaintiff to demonstrate that: "(1) she is a member of the
protected class; (2) she was qualified for the position in

question; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that gave rise to an inference of unlawful discrimination." Bradley v. Just Greens, LLC, No. 19-7162, 2019 WL 4316773, at *3 (D.N.J. Sept. 12, 2019).  Under the NJLAD, a retaliation claim requires a plaintiff to show that "(1) she was engaged in a protected activity known to defendant; (2) she was subjected to an adverse employment decision by the defendant following the engagement of the activity; and (3) a causal link exists between the protected interest and the following adverse employment action." Bowman v. Rowan Univ., No. 18-04239, 2018 WL 6617831, at *3 (D.N.J. Dec. 18, 2018).

In line with their Title VII disparate treatment and retaliation claims, such claims under the NJLAD also require a showing of an "adverse employment action." Bradley, 2019 WL 4316773, at *3; Bowman, 2018 WL 6617831, at *3.  As we discussed above, neither Plaintiff alleged any adverse employment action after January 2019 when the Title VII applicable period began. Thus, Plaintiffs have also not alleged any adverse employment action within the applicable period of the NJLAD claims that begins in February 2020.  Therefore, we will dismiss Counts VIII, IX, and X, Plaintiffs' NJLAD disparate treatment and retaliation claims.

### ii. NJLAD Hostile Work Environment (Count VI and Count VII)

To establish a hostile work environment claim under the NJLAD, "a plaintiff must demonstrate that "the complained-of conduct (1) would not have occurred but for the employee's gender [or race]; and it was (2) severe or pervasive enough to make a(3) reasonable [person of the same protected class] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Hurley v. Atl. City Police Dep't, 174 F.3d 95, 114 (3d Cir. 1999) (quoting Lehmann v. Toys R Us, Inc., 626 A.2d 445, 453 (N.J. 1993) (alteration added).

Like under Title VII, a hostile work environment claim under the NJLAD may also be supported by a continuing violation. Sgro v. Bloomberg L.P., 331 F. App'x 932, 938 (3d Cir. 2009). The hostile work environment standard is consistent with the Title VII framework. Nuness v. Simon & Schuster, Inc., 325 F. Supp. 3d 535, 545 (D.N.J. June 29, 2018). The New Jersey Supreme Court has "specifically adopted the 'severe or pervasive' test as part of its comprehensive standard." Id.

In order for the continuing violation doctrine to support Plaintiffs' NJLAD hostile work environment claim, we must identify allegations within the applicable period, which begins later than the Title VII period. Plaintiff Davis alleged the

following after February 14, 2020: that she was intimidated by an investigation into her coverage while at a Black Lives Matter event (Id. at ¶¶ 95-97), that officers use the word "bitch" on an everyday basis (Id. at ¶ 48), and that Defendant Skill tauntingly waived at her and intimidatingly ignored her (Id. at ¶¶ 91, 101).

Plaintiff Gannon alleged the following after February 14,2020: that she said hello to a former chief who ignored her and followed her down the hall "in an intimidating manner." (Id. at ¶¶ 210-11). Because Plaintiffs have alleged these instances of alleged harassment within the applicable period, the continuing violation doctrine applies as discussed above and provides for consideration of their other allegations. Therefore, at this time they will be permitted to proceed on their NJLAD hostile work environment claims in addition to their Title VII hostile work environment claims. Defendants' motion to dismiss Counts VI and VII, Plaintiffs' NJLAD hostile work environment claims, will be denied.

### iii. Aiding and Abetting

In order to establish liability as an "aider or abettor" under the NJLAD, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the

assistance; and (3) the defendant must knowingly provide and substantially assist the principal violation." <u>Lindsey v. N.J. Dep't of Corrections</u>, No. 04-3815, 2007 WL 836667, at *16 (D.N.J. Mar. 14, 2007). Further, "[w]hether a Defendant provides substantial assistance is determined based upon several factors: '(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor.'" <u>Papp v. MRS BPO LLC</u>, No. 13-3183, 2015 WL 5247005, at *9 (D.N.J. Sept. 9, 2015) (<u>quoting</u> <u>Albiaty v. L'Oreal USA Prods., Inc.</u>, No. L-2650-04, 2009 WL 1562948, at *10 (N.J. Super. App. Div. June 5, 2009).

Defendants argue that with respect to the aiding and abetting claim against Defendants Vivarina and Skill, "the vast majority of the allegations against both Defendants are barred by the statute of limitations." (Motion to Dismiss Br. at 38). Further, they assert that "[f]or the very few allegations that are not barred, they simply do not meet the standard for 'aiding and abetting' under the NJLA." (Id.). There are no allegations of conduct from defendant Vivarina within the statute of limitations period for the NJLAD. Plaintiff Davis makes allegations related to intimidation against Defendant Skill within the two-year statute of limitations. (Compl. at ¶ 91,

101).  Plaintiff Gannon makes allegations that Defendant Skill overburdening her with trainings during the limitations period. (Id. at ¶ 215).  While Defendants allege that the allegations "do not bespeak an 'overall illegal or tortious activity,'" they do not provide any substantive analysis of what constitutes illegal or tortious activity in this context and why the pertinent allegations are not sufficient.  Thus, the allegations of aiding and abetting, Count XI, with be permitted to proceed against Defendant Skill, but not Defendant Vivarina.

### IV.   <u>CONCLUSION</u>

For the reasons expressed above, Defendant's motion to dismiss the complaint will be granted in part and denied in part.  The following counts will be dismissed: Retaliation in Violation of Title VII (Count III), Race-Based Disparate Treatment in Violation of Title VII (Count IV), Gender-Based Disparate Treatment in Violation of Title VII (Count V), Retaliation in Violation of the NJLAD (Count VIII), Race-Based Disparate Treatment in Violation of the NJLAD (Count IX), Sex-Based Disparate Treatment in Violation of the NJLAD (Count X), and Aiding and Abetting in Violation of the NJLAD against all defendants except Defendant Skill (Count XI).  The following counts will be permitted to proceed: Sex-Based Hostile Work Environment in Violation of Title VII to the Civil Rights Act of 1964 (Count I), Race-Based Hostile Working Environment in

Violation of Title VII (Count II), Race-Based Hostile Work
Environment in Violation of the New Jersey Law Against
Discrimination ("NJLAD") (Count VI), Gender-Based Hostile Work
Environment in Violation of the NJLAD (Count VII), and Aiding
and Abetting in Violation of the NJLAD against Defendant Skill
only(Count XI).

An appropriate order will be entered.


Date: February 10, 2023                s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.